NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 12a0763n.06

No. 11-1468

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED

*Jul 13, 2012*

LEONARD GREEN, Clerk

DEMETRIUS MALORY,

     Plaintiff - Appellee,

v.

GARY WHITING; JOSEPH GENTILIA,

     Defendants - Appellants,

CITY OF FERNDALE, et al.,

     Defendants.

ON APPEAL FROM THE UNITED
STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF MICHIGAN

_____/

BEFORE:    COLE and CLAY, Circuit Judges; MATTICE, District Judge.[*]

    **CLAY, Circuit Judge.** Defendants Gary Whiting and Joseph Gentilia ("Defendants"), police officers employed by the City of Ferndale, Michigan, appeal an order partially denying their motion for summary judgment in Plaintiff Demetrius Malory's § 1983 action. Defendants argue that the district court incorrectly denied them qualified immunity on Plaintiff's excessive force claim. Because the district court correctly decided that a genuine issue of material fact remained as to whether Defendants violated Plaintiff's clearly established constitutional right to be free from excessive force during a police arrest, we **AFFIRM**.

---

[*]The Honorable Harry S. Mattice, Jr., United States District Judge for the Eastern District of Tennessee, sitting by designation.

## BACKGROUND

On February 18, 2009, Plaintiff was driving his friend's car westbound on Eight Mile Road in Ferndale, Michigan when he ran a red light. Two officers pulled Plaintiff over and asked for his driver's license. When Plaintiff explained that he did not have a valid driver's license, the officers arrested Plaintiff and took him to the police station without incident.

The confrontation at the center of this case occurred when Plaintiff was booked at the police station.[1] Lieutenant Gary Whiting was the officer in charge of the station. Whiting and Officer Joseph Gentilia were among a number of officers in the area where Plaintiff was being booked and photographed. Defendant Whiting stood behind the booking counter. Defendant Gentilia entered Plaintiff's personal information into the police computer system and took Plaintiff's fingerprints.

When it came time for Plaintiff to sign the form that would allow him to receive his property, Whiting examined Plaintiff's wallet. He began removing the contents and tossing them onto the counter. Plaintiff protested, to which Whiting responded, "I do what the fuck I want to do." (Malory Dep. 64, R. 28.) Plaintiff then initialed his property form. Whiting instructed Plaintiff to sign his entire name, even though another officer conducting the booking expressed no concern about the initials. Plaintiff retorted that while he served in the Marine Corps, it was sufficient to sign forms with his initials. Whiting persisted with his instruction. Plaintiff then signed the form with an "x,"

---

[1]Evidence of the confrontation is composed of the depositions of Plaintiff and Defendants, as well as a video recording of the booking. As we explain below, the posture of our review requires us to accept Plaintiff's account of the events to the extent that it is not "blatantly contradicted" by the video recording. *See Coble v. City of White House, Tenn.*, 634 F.3d 865, 868 (6th Cir. 2011) (quoting *Scott v. Harris*, 550 U.S. 372, 380–81 (2007)).

which he testified that he meant as a joke. Whiting expressed irritation, pointing to Plaintiff's signature on two state identification cards found in Plaintiff's wallet and stating that Plaintiff signed his full name on those cards. Whiting called Plaintiff a "smart ass" and cut up the identification cards. (*Id.* 69.)

Whiting ordered Plaintiff to take his clothes off, so he could be searched before being placed in a cell. Plaintiff understood the order as a command to strip naked. Plaintiff told Whiting that he thought taking off all of his clothes would be inappropriate, because a female officer was in the area. Plaintiff proceeded to remove his coat, polo shirt (under which Plaintiff was wearing a thermal shirt), and his belt. He placed his belt over his shoulder.

Whiting apparently became concerned when Plaintiff put his belt over his shoulder. Officer Whiting walked out from behind the booking counter, stood behind Plaintiff, and instructed Plaintiff to place his hands behind his back. Plaintiff complied, and Whiting took hold of Plaintiff's hands. Whiting grabbed Plaintiff's neck and shoved him into the booking counter. Then, Whiting reached for Plaintiff's right ankle and pulled it out from under him. Whiting pulled Plaintiff to the ground. Once Plaintiff lay on the ground face down, Whiting put his knee on Plaintiff's left temple and "started driving" his knee into Plaintiff's left ear. (*Id.* 87.)

While Whiting held Plaintiff on the ground, Gentilia handcuffed one of Plaintiff's wrists. Plaintiff testified that he extended his other wrist to enable the officer to handcuff it. Gentilia instead stood on that wrist and punched Plaintiff several times in the ribs. Plaintiff felt the other officers pulling at his arms and legs. Plaintiff's free wrist was then handcuffed, and officers cut off his thermal shirt, shoelaces, and socks. The officers then gave Plaintiff back his polo shirt to put on and

3

moved him into a holding cell. Plaintiff asked for medical care and the ability to make a phone call, but he received neither. A friend arrived to pick Plaintiff up but was turned away. Plaintiff appeared before a judge the next day. The judge set bond, which Plaintiff paid. Plaintiff then received treatment at a Veterans Affairs hospital. Plaintiff claims he suffered several injuries as a result of the incident, including aggravation of his depression and anxiety disorder, headaches, hearing loss, and a torn eardrum, which required the insertion of a hearing tube.

Plaintiff filed a complaint in state court against Whiting, Gentilia, and other defendants uninvolved in this appeal, alleging claims of, *inter alia*, deprivation of a constitutional right in violation of 42 U.S.C. § 1983 and assault and battery. The defendants removed the case on the basis of federal question jurisdiction. *See* 28 U.S.C. § 1331. The parties conducted discovery, and all of the defendants moved for summary judgment. The district court granted the motion in part and denied it in part. As it relates to this appeal, the district court denied summary judgment with respect to Plaintiff's § 1983 and assault and battery claims against Whiting and Gentilia, concluding that they were not entitled to qualified and governmental immunity on those claims. Viewing the evidence in the light most favorable to Plaintiff, the district court concluded that Plaintiff established a genuine issue of material fact regarding whether Defendants used excessive force and that the constitutional prohibition on the use of excessive force was clearly established at the time of the incident and on the facts of this case.

The district court also did not find Defendants entitled to governmental immunity on Plaintiff's state-law assault and battery claim. Citing Plaintiff's description of his confrontation with Whiting and Gentilia, the district court concluded that Plaintiff established a genuine issue of

material fact regarding whether Defendants' actions entitled them to governmental immunity under Michigan law. The court granted the defendants' motion with respect to all other claims and all other defendants.[2]

Plaintiff timely appealed. The district court's judgment is an appealable final order under 28 U.S.C. § 1291, because the district court rejected a qualified immunity defense and the appeal concerns undisputed facts demonstrating a violation of clearly established federal law. *Whitney v. City of Milan*, 677 F.3d 292, 296 (6th Cir. 2012). Our jurisdiction over this appeal is "quite narrow": Defendants must "overlook any factual dispute" between the parties and also "concede an interpretation of the facts in the light most favorable to the plaintiff's case," as Defendants have done. *Everson v. Leis*, 556 F.3d 484, 496 (6th Cir. 2009) (quoting *Berryman v. Rieger*, 150 F.3d 561, 562 (6th Cir. 1998)).

## DISCUSSION

### I. Standard of Review

Whether Defendants are entitled to qualified immunity is a legal question reviewed *de novo*, as is the question of whether summary judgment is appropriate. *Binay v. Bettendorf*, 601 F.3d 640, 646 (6th Cir. 2010). A moving party is entitled to summary judgment if the pleadings, the discovery and the disclosure materials on file, and any affidavits "show[] that there is no genuine dispute as

---

[2]Plaintiff conceded before the district court that he lacked evidence to prove that Defendants acted with deliberate indifference to his medical needs. The district court found no evidence tending to prove that the four other police-officer defendants used excessive force on Plaintiff. The district court also found no evidence supporting Plaintiff's claim of municipal liability against the City of Ferndale and no evidence supporting Plaintiff's malicious prosecution, false arrest, false imprisonment, and gross negligence claims. Plaintiff did not cross-appeal the dismissal of these claims.

to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). There exists no genuine issue of fact where the record "taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The primary issue for our review is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986). We must "construe the evidence and draw all reasonable inferences in favor of the nonmoving party." *Hawkins v. Anheuser–Busch, Inc.*, 517 F.3d 321, 332 (6th Cir. 2008).

## II.    § 1983 Claim

### A.    Legal Framework

#### 1.    *Excessive Force*

In order to make out a claim under 42 U.S.C. § 1983, a plaintiff must establish (1) the violation of an existing constitutional right (2) by a person acting under color of state law. *Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 155 (1978); *Waters v. City of Morristown*, 242 F.3d 353, 358–59 (6th Cir. 2001).

The Fourth Amendment of the United States Constitution protects a person from being subjected to excessive physical force during the course of an arrest, a booking, or other police seizure. *Drogosch v. Metcalf*, 557 F.3d 372, 378 (6th Cir. 2008); *Phelps v. Coy*, 286 F.3d 295, 299–300 (6th Cir. 2002). When a plaintiff alleges that a police officer applied excessive force during a pre-arrest seizure, the question is whether the officer's conduct was objectively reasonable. *Graham v. Connor*, 490 U.S. 386, 397 (1989). In assessing the reasonableness of the officer's

actions, we consider "the facts and circumstances of each particular case, including (1) the severity of the crime at issue, (2) whether the suspect poses an immediate threat to the safety of the officers or others, and (3) whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* at 396 (divisions added); *see Williams v. City of Grosse Pointe Park*, 496 F.3d 482, 486 (6th Cir. 2007).

We are required to honor several rules of deference in assessing an excessive force claim. *See id.* We must assess the reasonableness of the officer's action "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396. That means that our assessment of the reasonableness of the officers' conduct allows "for the fact that police officers are often forced to make split second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id.* at 396–97. The deference afforded to an officer reflects the requirement of "a 'careful balancing' of the individual interest in being free from unreasonable seizures and the important governmental interest in protecting the safety of its peace officers and the public." *Williams*, 496 F.3d at 486 (quoting *Graham*, 490 U.S. at 396). Finally, the officer's "underlying intent or motivation" in using physical force is an irrelevant consideration. *Graham*, 490 U.S. at 397.

### 2. *Qualified Immunity*

A government official is entitled to qualified immunity on a § 1983 claim if he is "performing discretionary functions" and his conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity gives governmental officials protection "from undue

interference with their duties and from potentially disabling threats of liability." *Id.* at 806.  When a defendant raises the defense of qualified immunity, the plaintiff bears the burden of establishing that the defendant is not entitled to the defense.  *Binay*, 601 F.3d at 647.

We decide whether a government official is entitled to qualified immunity in two-step inquiry, which we may undertake in any order we choose.  *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).  First, we decide whether the facts, viewed in the light most favorable to the purportedly injured party, "show the officer's conduct violated a constitutional right."  *Scott v. Harris*, 550 U.S. 372, 377 (2007) (quoting *Saucier v. Katz*, 533 U.S. 194, 201 (2001)).  Second, we decide "whether the right was clearly established . . . in light of the specific context of the case."  *Id.* (quoting *Saucier*, 533 U.S. at 201).  In undertaking this inquiry, the Court "analyzes the subject event in segments." *Morrison v. Bd. of Trustees of Green Twp.*, 583 F.3d 394, 401 (6th Cir. 2009).

**B.     Analysis**

*1.     Whether Defendants Violated Plaintiff's Constitutional Rights*

Defendants argue that it was improper for the district court to deny them qualified immunity, because, according to Defendants, Plaintiff posed a danger to the officers and the force Defendants used to subdue him was not excessive.  The record before us betrays this contention.

We begin by taking note of two facts that Defendants ignore in their appeal: the decidedly non-violent nature of Plaintiff's offense and his compliant conduct when he was transported to the police station.  Plaintiff was arrested for driving without a driver's license, an offense that involves no physical violence.  Moreover, all parties agree that Plaintiff was compliant with officers when he was arrested and transported to the station.  Therefore, the confrontation that gave rise to Plaintiff's

claim occurred against the backdrop of conduct by Plaintiff that no reasonable person could have interpreted as threatening. Defendants did not argue to the contrary in moving for summary judgment, and not a word is devoted to these facts in their brief on appeal.

Plaintiff's offense of arrest and conduct during his conveyance to the police station distinguish this case from others cited by Defendants in which we have found law enforcement officers entitled to qualified immunity. For example, in *Goodrich v. Everett*, 193 F. App'x 551 (6th Cir. 2006), two officers tackled a suspect and forced him down into a bed of mulch. *Id.* at 553. Officers had pursued the suspect on suspicion of aggravated domestic assault, and the suspect drove away from five law enforcement vehicles in pursuit of him and evaded two police roadblocks designed to stop him. *Id.* at 555–56. In *Dunn v. Matatall*, 549 F.3d 348 (6th Cir. 2008), two officers pulled a suspect out of his car and accidentally broke the suspect's hip, and we decided that the officers' conduct was objectively reasonable in light of the fact that the suspect fled the officers when they attempted to pull him over. *Id.* at 354. In these cases, the suspects' offenses of arrest and conduct shortly after their arrests gave officers reasons to fear that the suspects might act violently. By contrast, Plaintiff's offense of arrest and conduct afterward gave Defendants no reason to fear that he might act violently toward them.

Nor did Plaintiff's conduct at the booking counter give Defendants a serious reason to fear that Plaintiff posed a threat of violence. Defendants argue that Plaintiff acted belligerently during the booking process and did so to a degree that justified Defendants' violent restraint. According to Defendants, Plaintiff's acts of signing an "x" instead of his name to a property form, resisting

9

Officer's Whiting command to take off his clothing, and putting his belt on his shoulder indicated a level of belligerence on Plaintiff's part justifying Defendants' conduct.

This argument is unconvincing. Plaintiff's conduct was argumentative at worst, and this behavior may have warranted some restraint of Plaintiff by the officers. Thus, the portion of the confrontation in which Whiting put Plaintiff's hands behind his back was not objectively unreasonable. And while it was unnecessary for Whiting to thrust Plaintiff against the booking counter, the video recording contradicts Plaintiff's claim that Whiting slammed his head onto the counter. *See Morrison*, 583 F.3d at 401.

The portion of the scuffle in which Whiting slammed Plaintiff to the ground and drove his knee into Plaintiff's temple, and in which Gentilia stepped on Plaintiff's hand and punched him in the ribs, is another story. Defendants contend that the level of Plaintiff's resistance justified the conduct, but neither the video recording nor Plaintiff's account support this contention. The video recording demonstrates little more than Plaintiff's show of discomfort when Whiting lifted his ankle and bent it behind his thigh. Whiting's force in reaction to that show of discomfort was decidedly "disproportionate in degree to the circumstances." *Gaddis ex rel. Gaddis v. Redford Twp.*, 364 F.3d 763, 776 (6th Cir. 2004). Viewing the evidence in the light most favorable to Plaintiff, Plaintiff's conduct was not threatening and he offered no indication of any attempt to flee from officers. Plaintiff did nothing to merit the level of force deemed appropriate in cases like *Goodrich*, *Dunn*, and other cases cited by Defendants in which we found officers' conduct reasonable. *See, e.g.*, *Burchett v. Keiffer*, 310 F.3d 937, 944–45 (6th Cir. 2002).

Defendants argue that they reasonably believed Plaintiff was "taking an attack stance" when he placed his belt over his shoulder while refusing to remove his extra layers of clothing. (Defs.' Br. 16–17.) We think it is safe to say that a reasonable officer would not associate the act of placing a person's belt on his shoulder with "taking an attack stance." Even if the act was somehow provocative, it was not so obviously aggressive to warrant brute physical force by Defendants, particularly without first asking Plaintiff to remove the belt from his shoulder.

Defendants also contend that Plaintiff continued to resist the officers after they forced him to the ground, which, according to Defendants, made it necessary to press Plaintiff's temple into the ground and punch him in the ribs. The record before us contradicts this contention. Plaintiff testified that, after being forced to the ground, he attempted to move his head to avoid the pressure of Whiting's knee on his ear and to extend his free wrist to allow it to be handcuffed. Nothing in the video recording blatantly contradicts this aspect of Plaintiff's account, so Defendants are bound by this characterization of the incident on appeal. *Scott*, 550 U.S. at 378. Defendants nevertheless contend that Plaintiff's movements while on the ground and under Whiting were aimed at resisting or harming Defendants. Their attempt to argue facts contrary to Plaintiff's testimony and the video recording is outside the scope of our jurisdiction, which is predicated only on deciding "legal disputes, not factual ones." *Bomar v. City of Pontiac*, 643 F.3d 458, 461 (6th Cir. 2011). Defendants' attempt to recharacterize the facts also contravenes the posture of our review, in which we must defer to Plaintiff's version of events. *Hawkins*, 517 F.3d at 332; Fed. R. Civ. P. 56(c).

Finally, Defendants argue that their conduct was reasonable in light of Whiting's deposition testimony that he had previously seen suspects attack arresting officers. This argument is not

tailored to the evidentiary requirements at issue in this case. To establish their entitlement to qualified immunity, Defendants are required to demonstrate the reasonableness of "the amount of force that is necessary in a particular situation." *Graham*, 490 U.S. at 397. Officer Whiting's generalized speculation about the force required in other situations is immaterial to this case, insofar as Defendants fail to point to behavior of Plaintiff's that would give rise to a reasonable concern that Plaintiff posed a threat to the officers' safety.

### 2. Whether Plaintiff's Constitutional Right Was Clearly Established

Defendants argue that any right of Plaintiff's violated during the booking was not clearly established. A right is clearly established if it is "sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Feathers v. Aey*, 319 F.3d 843, 848 (6th Cir. 2003) (internal quotations and citations omitted). The Court must decide whether a right is clearly established "in light of the specific context of the case, not as a broad general proposition." *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004) (internal citation and quotation omitted). Nevertheless, "[a]n action's unlawfulness can be apparent even in novel factual circumstances 'so long as the prior decisions gave reasonable warning that the conduct then at issue violated constitutional rights.'" *Beard v. Whitmore Lake Sch. Dist.*, 402 F.3d 598, 607 (6th Cir. 2005) (quoting *Hope v. Pelzer*, 536 U.S. 730, 740 (2002)).

A suspect's right to be free from excessive force from arresting officers is clearly established. *Bletz v. Gribble*, 641 F.3d 743, 756 (6th Cir. 2011). Defendants argue that a suspect's right to be free from excessive force is clearly established only when police handcuff him, and, since Plaintiff

was not in handcuffs when Whiting tackled him, Plaintiff's right to be free from excessive force was not clearly established under the facts of his case.

This argument is inconsistent with our cases. The question of whether a "clearly established legal norm" prohibited Defendants' conduct does not turn on the technicality of whether Plaintiff was handcuffed. *Harris v. City of Circleville*, 583 F.3d 356, 367 (6th Cir. 2009); *see Mitchell*, 472 U.S. at 528. The increased threat to an officer's safety posed by a handcuffed suspect, on the one hand, and by a suspect whose hands are free and who has done no more than made a minor show of stubbornness, on the other hand, is marginal. In both instances, restraining the suspect by tackling, stepping on, and punching him is "disproportionate in degree to the circumstances." *Gaddis ex rel. Gaddis*, 364 F.3d at 776. As such, our cases have framed a suspect's right to be free from excessive force as "a clearly established legal norm precluding the use of violent physical force against a criminal suspect *who already has been subdued and does not present a danger to himself or others*." *Harris*, 583 F.3d at 367 (emphasis added). And consistent with this rule, whether a suspect was handcuffed when officers applied violent force has not been a decisive consideration in our determination of whether a suspect's freedom from excessive force was clearly established. *See Grawey v. Drury*, 567 F.3d 302, 311 (6th Cir. 2009) (concluding that it was objectively unreasonable for an officer to subdue a suspect with pepper spray when the suspect was unarmed, posed no threat to officers, and was not resisting arrest); *Burden v. Carroll*, 108 F. App'x 291, 294 (6th Cir. 2004) ("It is well established that a police officer cannot continue to use force once a reasonable officer would conclude that force is no longer justified by the circumstances."); *Phelps*, 286 F.3d at 301–02 (concluding that it was objectively unreasonable for an officer to punch a suspect in the face and

slam his head on the ground after the officer restrained the plaintiff by tackling him). Thus, we need only to consider whether the law gave Defendants "reasonable warning" that the level of force they used against Plaintiff was excessive given the particular threat he posed. *See Beard*, 402 F.3d at 607 (internal quotation and citation omitted).

It surely did. Though Plaintiff was not handcuffed when Whiting began restraining him, his resistance toward Defendants at the booking counter was sufficiently benign that a reasonable officer would have understood that it was unnecessary to tackle, step on, and punch Plaintiff to prevent him from acting violently toward the officers. *See Feathers*, 319 F.3d at 848. Under the facts established here, Plaintiff was subdued and presented no danger to Defendants when Defendants used violent physical force against him. At best, he acted stubbornly. In light of that conduct, reasonable officers would have understood that an obvious legal norm prohibited them from tackling a suspect who made only a mild show of resistance, pressing his head into the ground, and punching him. Any factual argument suggesting the reasonableness of Defendants' conduct should be made to a jury.

### III. Assault and Battery Claim

The district court also denied Defendants' motion for summary judgment on Plaintiff's state-law assault and battery claim. The district court's denial of governmental immunity is a final order under Michigan law, so we have jurisdiction to review it alongside Defendants' appeal of the district court's denial of qualified immunity. *See Livermore ex rel. Rohm v. Lubelan*, 476 F.3d 397, 408 (6th Cir. 2007) (citing M.C.R. 7.202(6)(a)(v)).

In Michigan, a plaintiff alleging an assault must prove an "intentional unlawful offer of corporal injury to another person by force, or force unlawfully directed toward the person of another,

14

under circumstances which create a well-founded apprehension of imminent contact, coupled with the apparent present ability to accomplish the contact." *VanVourous v. Burmeister*, 687 N.W.2d 132, 142 (Mich. Ct. App. 2004) (internal citation and quotation omitted). A battery claim requires the plaintiff to prove "wilful and harmful or offensive touching of another person which results from an act intended to cause such a contact." *Id.* (internal citation and quotation omitted).

Michigan law grants governmental immunity to a police officer facing an assault and battery claim if the officer acted within the scope of his employment and in good faith, and his conduct was discretionary rather than ministerial. *Odom v. Wayne Cnty.*, 760 N.W.2d 217, 228 (Mich. 2008). The parties agree that Defendants acted within the scope of their employment in restraining Plaintiff and that their conduct was discretionary. Hence, the only issue for us to decide is whether a genuine dispute of material fact exists as to whether Defendants acted in good faith.

The question of Defendants' good or bad faith in restraining Plaintiff is "subjective in nature." *Id.* at 229. The good-faith condition "protects a defendant's honest belief and good-faith conduct with the cloak of immunity while exposing to liability a defendant who acts with malicious intent." *Id.* An officer lacks good faith if he acts with "malicious intent" or undertakes "capricious action . . . or willful and corrupt misconduct." *Id.* at 225 (internal quotation and citation omitted); *see Hart v. Danak*, No. 280975, 2010 WL 1404431, at *5 (Mich. Ct. App. Apr. 8, 2010) (unpublished decision) ("Good faith means acting without malice.").

The question of an officer's good faith under Michigan law overlaps considerably, if not entirely, with our analysis of whether the officer's actions were objectively reasonable under the circumstances. *VanVourous*, 687 N.W.2d at 142. Therefore, our inquiry into the good-faith basis

of Defendants' conduct tracks our inquiry into the objective reasonableness of Defendants' actions under the Fourth Amendment and leads to the same result. Defendants' conduct in restraining Plaintiff was disproportionate to the threat a reasonable officer would have perceived from him. Plaintiff readily obliged to the arresting officers' decision to transport him to the police station, complied with Whiting's request to take off the outer layer of his clothing, and did not take any action reasonably indicating an intent to act violently toward Defendants. Defendants could have used less severe force than they did to restrain Plaintiff, given the level of recalcitrance he displayed. Therefore, a genuine issue of material fact exists as to whether Defendant acted in good faith.

Defendants compare this case to *Hart v. Danak*, 2010 WL 1404431, at \*5, in which the Michigan Court of Appeals explained that, "[w]hen addressing an action for assault and battery, discretion must be reposed in a law enforcement officer when making an arrest, the means necessary to apprehend the alleged offender, and to keep him secure after the apprehension." However, Defendants' conduct falls outside the zone of discretion recognized by this principle. Surely the officers had the power to use some discretion in apprehending Plaintiff and keeping him secure after the apprehension. *See id.* But, as we have explained, Plaintiff had already been apprehended and was decidedly secure when Gentilia and Whiting applied violent physical force to him. Hence, Plaintiff's case does not allow us to conclude as a matter of law that Defendants acted in good faith in restraining Plaintiff, because it is not apparent to us that Plaintiff posed any threat requiring such a forceful effort to restrain him.

## CONCLUSION

For the reasons stated above, we **AFFIRM** the district court's judgment that genuine issues of material fact remain as to whether Defendants Whiting and Gentilia are entitled to qualified immunity on Plaintiff's § 1983 claim and governmental immunity on his state-law assault and battery claim.