NOT RECOMMENDED FOR PUBLICATION
File Name: 23a0531n.06
No. 23-5206

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
Dec 18, 2023
KELLY L. STEPHENS, Clerk

| | | |
|---|---|---|
| CARY WILLIAMS, | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF KENTUCKY |
| | ) | |
| KENTON COUNTY, KENTUCKY; NOAH SCHOULTHEIS, in his individual capacity, | ) | |
| Defendants-Appellants. | ) | OPINION |
| | ) | |

Before: BATCHELDER, GRIFFIN, and LARSEN, Circuit Judges.

LARSEN, Circuit Judge. After being arrested for public intoxication, Cary Williams was brought to the Kenton County Detention Center. There, he was booked and, based on his intake interview, was placed on suicide watch and assigned to an isolation cell. Deputies, including Noah Schoultheis, asked Williams to remove his clothing and change into a suicide smock. Williams tossed the deputies his shirt and shorts without incident but then tossed his underwear in the direction of Schoultheis's face. Schoultheis responded by pushing Williams on the neck. Williams fell backwards and broke his arm. He sued Schoultheis and Kenton County, among others. Schoultheis moved for summary judgment, based on qualified immunity, on Williams's § 1983 excessive-force and state-law assault and battery claims. The district court denied that motion and Kenton County's motion for summary judgment on Williams's § 1983 municipal-liability claim. Schoultheis and Kenton County appeal. Williams moves to dismiss for lack of jurisdiction. For the reasons below, we GRANT the motion to dismiss and DISMISS for lack of jurisdiction.

I.

On August 16, 2020, Cary Williams attended a birthday party at a home in Covington, Kentucky. He spent the day going between that home and nearby bars. In the evening, Williams was asked to leave one of those bars. Shortly thereafter, someone called 911 to report that Williams had gotten into an altercation.

At 10:05 p.m., Covington police officers arrived and spoke to Williams. They implored Williams to call an Uber and go home. He refused and was arrested for public intoxication. At 10:30 p.m., Williams arrived at the Kenton County Detention Center. Based on his intake interview, Williams was assigned to an isolation cell and placed on suicide watch.

At 11:40 p.m., Deputies Noah Schoultheis and Leonard Slaughter escorted Williams from the booking area to his cell. Deputy Cory Fleckinger was there when they arrived. Williams was asked to remove his clothing and change into a suicide smock. Initially, Slaughter stood alone at the door to the cell holding open a property bag, with Schoultheis and Fleckinger several feet behind him. Slaughter's body camera recorded the events, but there is no audio for the first thirty seconds. Williams first removed his shirt and tossed it in the direction of Slaughter's outstretched hand. The audio then begins with Slaughter warning Williams not to throw his shorts at him after taking them off. Williams removed his shorts and again tossed them in the direction of Slaughter's outstretched hand. He was not reprimanded for tossing the shorts. Schoultheis then walked up to the cell and stood next to Slaughter. Schoultheis or Slaughter asked Williams to take his underwear off. Williams replied: "Take my underwear off—really?" He called the deputies "fascists" and "Nazis" while taking off his underwear. Williams then tossed the underwear in the direction of Schoultheis's face. Schoultheis raised his arms and deflected the underwear, which landed on his shoulder. Slaughter removed the underwear from Schoultheis's shoulder as Schoultheis stepped

forward into the cell. Schoultheis pushed Williams on the neck using an open hand and straight arm. Williams backed into his bunk and fell to the floor. Schoultheis stood over Williams and yelled: "Do it again!" Williams replied: "Do what? . . . Yeah, whatever." Williams continued to curse the deputies as they closed the cell door and tossed him the suicide smock.

At 3:40 a.m., Nurse Angela Miller, along with Deputy Nick Taylor, arrived at the cell to perform a "diabetic check" on Williams. Williams complained of arm pain to Miller. But Miller reported observing nothing that required immediate medical attention. At 7:20 a.m., Williams was released. He retrieved his car and drove to the Veterans Affairs Medical Center in Cincinnati, Ohio. There, he was diagnosed with a broken arm for which he received treatment over the next several months.

On June 24, 2021, Williams filed this suit. Williams brought: (1) 42 U.S.C. § 1983 claims against Kenton County, Schoultheis, Slaughter, Fleckinger, and Taylor; (2) state-law assault and battery claims against Schoultheis; and (3) state-law negligence claims against Schoultheis, Slaughter, Fleckinger, and Taylor. The § 1983 claims included an excessive-force claim against Schoultheis, failure-to-intervene claims against Slaughter and Fleckinger, and deliberate-indifference claims against Schoultheis, Slaughter, Fleckinger, and Taylor. Williams alleged that Kenton County was liable because its policies caused those violations.

At the close of discovery, all defendants moved for summary judgment. The district court granted summary judgment to Schoultheis, Slaughter, Fleckinger, and Taylor on the negligence claims and to Slaughter, Fleckinger, and Taylor on all § 1983 claims. It denied Schoultheis's motion for summary judgment, based on qualified immunity, on the § 1983 excessive-force and state-law assault and battery claims. The district court also denied Kenton County's motion for summary judgment on the § 1983 municipal-liability claim.

Schoultheis and Kenton County appeal. Williams moves to dismiss for lack of jurisdiction.

## II.

This court has jurisdiction over appeals from the final orders of district courts, 28 U.S.C. § 1291, and certain interlocutory and collateral orders, 28 U.S.C. § 1292. *See Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 545–47 (1949). We may also exercise pendent jurisdiction over appeals that are "inextricably intertwined" with those over which we have independent jurisdiction. *See Chambers v. Ohio Dep't of Hum. Servs.*, 145 F.3d 793, 797 (6th Cir. 1998).

### A.

Schoultheis first appeals the district court's denial of his motion for summary judgment, based on qualified immunity, on Williams's § 1983 excessive-force claim.

A district court's interlocutory order denying a claim of qualified immunity is an appealable "collateral order, *i.e.*, a final decision," when the appeal raises a question of law. *Johnson v. Jones*, 515 U.S. 304, 311 (1995) (cleaned up) (discussing *Mitchell v. Forsyth*, 472 U.S. 511, 528 (1985)). We may review the district court's legal determination that a given set of facts violates a constitutional right and that the right is clearly established. *DiLuzio v. Village of Yorkville*, 796 F.3d 604, 609 (6th Cir. 2015). We generally may not review the district court's conclusions as to whether there are "genuine" disputes of fact. *Johnson*, 515 U.S. at 319–20. That includes questions of "evidence sufficiency," "what actually occurred," "why an action was taken," or "who did it." *DiLuzio*, 796 F.3d at 609 (cleaned up). But where the district court's assessment of the record is "blatantly contradicted," such that "no reasonable jury could believe it," we may review that assessment as a question of law. *Id.* (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007)). When the district court finds a genuine dispute of material fact, we may still

hear an appeal when the appellant concedes the plaintiff's version of the facts and raises a question of law. *Berryman v. Rieger*, 150 F.3d 561, 563 (6th Cir. 1998).

An officer is entitled to qualified immunity unless he or she violated a clearly established statutory or constitutional right. *Pearson v. Callahan*, 555 U.S. 223, 231–32 (2009). The broad right at issue in this case is the Fourth Amendment protection against excessive force. *See Colson v. City of Alcoa*, 37 F.4th 1182, 1187 (6th Cir. 2022). In evaluating Fourth Amendment excessive-force claims, we apply an "objective reasonableness" standard. *See Burgess v. Fischer*, 735 F.3d 462, 472 (6th Cir. 2013). Whether an official's use of force is objectively reasonable is a "pure question of law." *Chappell v. City of Cleveland*, 585 F.3d 901, 909 (6th Cir. 2009) (quoting *Scott*, 550 U.S. at 381 n.8). We consider several factors in making that determination, including whether a detainee "poses an immediate threat" or was "actively resisting." *Graham v. Connor*, 490 U.S. 386, 396 (1989). We have said that active resistance includes "physically struggling with, threatening, or disobeying officers." *Rudlaff v. Gillispie*, 791 F.3d 638, 641 (6th Cir. 2015) (quoting *Cockrell v. City of Cincinnati*, 468 F. App'x 491, 495 (6th Cir. 2012)).

In this case, the district court concluded that there was a genuine dispute of material fact as to whether Williams complied with the deputies' instructions. It then reasoned that, viewing that and other disputed facts in the light most favorable to Williams, he neither posed a threat nor was actively resisting. Therefore, a reasonable jury could find that Schoultheis violated Williams's constitutional rights. And, because there is a clearly established right to be free from force when neither posing a threat nor actively resisting, a reasonable jury could find that Schoultheis violated Williams's clearly established rights. Schoultheis was therefore not entitled to summary judgment based on qualified immunity.

Schoultheis's appeal of that decision depends on his version of the disputed facts. He argues, contrary to the district court's determination, that Williams was actively resisting. But that argument is based on his view of the disputed facts. For example, Schoultheis claims that: (1) Williams defied multiple clear commands to put his underwear in the bag; (2) Williams had put his shirt and shorts in the bag; (3) Williams engaged in assaultive behavior; and (4) Williams was hostile and physically resistant. The district court found a genuine dispute of material fact as to whether Williams disobeyed the deputies—in other words, whether he threw the underwear "*to* [Schoultheis], rather than *at* him." R. 93, Memorandum Opinion and Order, PageID 2102. Schoultheis testified that, had Williams tossed the underwear "to" him, rather than "at" him, that would have been compliant. R. 74-7, Schoultheis Dep., PageID 629–31. And the district court concluded that "it is not clear that Williams's decision to fling the underwear toward Deputy Schoultheis instead of merely passing them over constitutes resistance at all." R. 93, Memorandum Opinion and Order, PageID 2101–02. Those facts, viewed in the light most favorable to Williams, are in direct conflict with those on which Schoultheis builds his arguments.

The district court's conclusions are consistent with the body camera footage. Williams removed his shirt and tossed it in the direction of Slaughter's outstretched hand. Slaughter warned Williams not to throw his shorts at him after taking them off. Williams removed his shorts and again tossed them in the direction of Slaughter's outstretched hand. He was not reprimanded. Schoultheis or Slaughter then asked Williams to take his underwear off but gave no further instructions. Williams was not asked to place his underwear directly in the property bag, only to take his underwear off and turn it over. Williams tossed the underwear in the direction of Schoultheis's face. This is not a case where the district court's assessment is so "blatantly

contradicted" by the record that it may be disputed as a question of law. *See DiLuzio*, 796 F.3d at 609 (quoting *Scott*, 550 U.S. at 380).

Schoultheis maintains that his appeal presents questions of law. Specifically, "whether Williams *actively resisted,* and whether Schoultheis is entitled to qualified immunity." Appellants Resp. to Mot. to Dismiss at 7. But Schoultheis does not concede the disputed facts in making those arguments. In arguing that he did not commit a constitutional violation, Schoultheis frames the question as whether "throwing dirty underwear at a deputy's face, after being instructed multiple times not to, constitutes *active resistance*." *Id.* But the district court found a genuine dispute of material fact as to whether Williams followed instructions, and specifically found that the deputies did *not* instruct Williams to place his underwear directly in the property bag. And, in arguing that he did not violate Williams's clearly established rights, Schoultheis again relies on his own version of the facts. As an example, Schoultheis argues: "This Court held that the deputy in [*Scott v. Kent County*, 679 F. App'x 435 (6th Cir. 2017),] reasonably perceived clenched fists as *active aggression*. In this case, Schoultheis reasonably perceived Williams's defiance of a command and aggressive behavior as *active aggression*." Appellants Br. at 21. Those arguments depend on Schoultheis's view of the disputed facts.

Still, when an appeal impermissibly disputes facts, this court may ignore those attempts and resolve the legal questions presented. *Est. of Carter v. City of Detroit*, 408 F.3d 305, 310 (6th Cir. 2005). But that requires that the appeal raise some purely legal question. *Id.* This one does not. At no point does Schoultheis argue that the facts, viewed in the light most favorable to Williams, fail to make out a constitutional violation or that such a violation was not clearly established. In fact, Schoultheis conceded that if Williams tossed the underwear "to" him, rather than "at" him, that would not have justified the use of force at all. R. 74-7, Schoultheis Dep.,

PageID 629–31. Schoultheis makes "no arguments concerning the denial of qualified immunity that do not rely on disputed facts," so "this court does not have jurisdiction." *McKenna v. City of Royal Oak*, 469 F.3d 559, 562 (6th Cir. 2006).

B.

Schoultheis next appeals the district court's denial of his motion for summary judgment, based on state-law qualified immunity, on Williams's state-law assault and battery claims. Although this issue was identified in his opening brief's jurisdictional statement and referenced in his statement of issues presented, Schoultheis failed to develop the argument in the argument section of his brief, thereby abandoning the issue. *Vander Boegh v. EnergySolutions, Inc.*, 772 F.3d 1056, 1063 (6th Cir. 2014). He briefly addressed the merits of this issue for the first time in his reply brief, but "[t]hat was one brief too late." *See Island Creek Coal Co. v. Wilkerson*, 910 F.3d 254, 256 (6th Cir. 2018). We therefore decline to address this issue further.

C.

Finally, Kenton County argues that we can exercise pendent jurisdiction over the municipal-liability claim if we decide, through the qualified immunity appeals, that Williams did not suffer a constitutional deprivation. But we have not reached that question because we lack jurisdiction over the qualified immunity appeals, so we cannot exercise pendent jurisdiction over the municipal-liability claim. *See McKenna*, 469 F.3d at 563.

* * *

We GRANT the motion to dismiss and DISMISS for lack of jurisdiction.